# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAIME MENDEZ,<br>    Petitioner,<br><br>v.<br><br>UNITED STATES,<br>    Respondent. | Case Nos.<br>3:01cr162 (SRU)<br>3:07cv1078 (SRU)<br>3:09cv1992 (SRU) |

## RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Jaime Mendez petitions this court, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. He alleges that he received ineffective assistance of counsel and, as a result, his guilty plea was entered unknowingly and involuntarily. Mendez argues separately that his criminal history score was incorrectly calculated at sentencing and that he is entitled to a 175-day credit to his federal sentence. For the reasons set forth in this ruling, Mendez's petitions for habeas relief are denied.

**I.  Background**

Mendez's conviction stems from a traffic stop in Massachusetts on October 26, 2000. Mendez was a passenger in a car driven by David Taborda, a co-defendant. Mendez and Taborda were traveling from Stamford, Connecticut, where they had obtained ten kilograms of cocaine. A state trooper pulled them over on the Massachusetts Turnpike and, after asking for identification, performed a roadside search of Taborda's car. That search revealed the ten kilograms of cocaine and led to the arrest of both men. Mendez was detained and, on December 13, 2000, was indicted for trafficking cocaine in violation of Mass. Gen. Laws ch. 94C, § 32E. He was not released on bond.

In April 2000, months before his arrest for drug trafficking, Mendez had been arrested in

Massachusetts for an unrelated crime of breaking and entering. It is unclear how or when Mendez was released for that earlier offense, but the record is certain that Mendez was not convicted of breaking and entering by the time of his arrest with Taborda in October 2000. On April 18, 2001, he pled guilty to the breaking and entering charge. While he was detained following his drug trafficking arrest, the Massachusetts court sentenced him to 175 days' incarceration on the breaking and entering conviction, which was treated as time served. Mendez proceeded to trial on the drug charge and was convicted of trafficking more than 200 grams of cocaine in August 2001. He received the state's mandatory minimum sentence of 15 years' imprisonment. *See* Mass. Gen. Laws ch. 94C, § 32E(b)(4). Mendez promptly appealed.

On July 21, 2001, while Mendez's case was being prosecuted in Massachusetts state court, the federal government indicted him and David Taborda in the District of Connecticut for conspiring to possess and distribute, as well as for possessing, more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), & 846. The government subsequently filed a superseding indictment on November 7, 2001, against Mendez, Taborda, and five other co-defendants. The federal charges arose from Mendez and Taborda's arrests in Massachusetts on October 26, 2000. On September 18, 2002, while Mendez's state appeal was pending, the government and Mendez entered into an agreement that the federal charges would be dismissed without prejudice, provided that Mendez's state conviction was affirmed on appeal. In exchange, Mendez waived all statute of limitations and speedy trial defenses in the event that his Massachusetts conviction was overturned and the federal government reinstated the drug distribution charges against him.

Holding that the prosecution had erroneously introduced criminal history evidence against

Mendez at trial, the Massachusetts Appeals Court reversed Mendez's conviction on May 4, 2004. *See Commonwealth v. Mendez*, No. 02-P-1504, 2004 WL 951309, at *1-*2 (Mass. App. Ct. May 4, 2004). The government then reinstated the federal charges against Mendez. Michael Hillis was appointed counsel for Mendez. Mendez entered into a plea agreement on November 22, 2004, and entered a guilty plea before Magistrate Judge William I. Garfinkel that same day.

That plea agreement stated in relevant part: "pursuant to 21 U.S.C. § 841(b)(1)(A), the offense carries with it a mandatory minimum sentence of ten years in prison," Resp't Ex. 2, at 1, and "[t]he defendant expressly understands that the Sentencing Guidelines determinations will be made by the Court . . . . [and t]he defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated," *id.* at 2. Finally, the agreement stated that Mendez "hereby waives his appellate rights if the sentence of the Court is ten years [sic] imprisonment or less" and "also waives any right to collaterally attack the sentence in a habeas proceeding . . . and acknowledges full satisfaction with his counsel." *Id.* at 4.

At the change of plea proceeding, Judge Garfinkel reiterated the ten-year mandatory minimum sentence that Mendez faced by pleading guilty. Resp't Ex. 3, at 20. Hillis also clarified that Mendez was pleading guilty "to have Massachusetts go away," *id.* at 22, and described Mendez's waiver of appeal rights as "he's waiving his right to appeal anything ten years or under, this would only affect a sentence that would cause the Court to give him more than ten years," *id.* at 24. Judge Garfinkel then engaged in the following colloquy with Mendez:

> THE COURT: Mr. Mendez, have you now had a chance to go over the plea agreement with your lawyer, to the full extent you believe necessary in order to proceed today?

>THE DEFENDANT: Yes, Your Honor, I have.
>
>THE COURT: And you – are you confident that you fully understand all of its provisions and its implications for you?
>
>THE DEFENDANT: Yes, Your Honor, I do.
>
>THE COURT: Okay.
>
>And has anyone made any promises to you, other than what's contained in the plea agreement, in order to make you plead guilty?
>
>THE DEFENDANT: No, Your Honor. . . .
>
>THE COURT: One of the things you need to know also, before we formally enter a plea, is that because of the operation of the sentencing guidelines, no one can tell you exactly, today, what your sentence would be. There would be a presentence report.
>
>THE DEFENDANT: Uh-huh.
>
>THE COURT: Your lawyer and the government's lawyer would be able to comment on it, and the judge would consider it, but as we sit here today, no one could tell you exactly what your guideline determination would be, and more importantly, what your actual sentence that Judge Underhill would impose would be, and there would be no right to overturn a conviction of guilty, and even no right of appeal unless that sentence was in excess of ten years.
>
>Do you understand that, sir?
>
>THE DEFENDANT: Yes, I'm very much aware of it, Your Honor.

*Id.* at 28-29, 35-36.

I sentenced Mendez to ten years' imprisonment on May 17, 2005. At the sentencing hearing, Mendez's counsel argued for a downward departure from the statutory mandatory minimum sentence pursuant to the "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S. Sentencing Guidelines Manual § 5C1.2. Those arguments failed, however, because Mendez had

more than one criminal history point on account of his breaking and entering conviction in Massachusetts. I held that, under *United States v. Resto*, 74 F.3d 22 (2d Cir. 1996), Mendez could not qualify for the safety valve exception by downwardly departing from his criminal history score pursuant to U.S. Sentencing Guidelines Manual § 4A1.3(b). Resp't Ex. 8, at 28-29. Mendez's other arguments for a safety valve departure were also unsuccessful. I held that Mendez's challenge to the constitutionality of the Massachusetts breaking and entering conviction on ineffective assistance of counsel grounds was not cognizable at sentencing and should be addressed initially in a state post-conviction action. *Id.* at 29. I also dismissed Mendez's argument that he never received a sentence for breaking and entering. Contrary to Mendez's position, the Massachusetts court credited 175 days served beginning October 26, 2000, and ending April 18, 2001, to the breaking and entering offense, and not to Mendez's state drug trafficking conviction. *Id.* at 35, 39.

After I rejected his arguments for a safety valve departure, Mendez made the following statement:

> THE DEFENDANT: Your Honor, I came to this court today, you know, thinking that the role that I had in this and always thinking that I wasn't going to get, or that I wasn't going to get the safety valve because of the conviction that I have in Massachusetts. In Massachusetts it's a misdemeanor. It's not a felony. It's a breaking and entering into an automobile to steal a stereo in an automobile. That's what I pleaded guilty to, and today because I pleaded guilty to that charge, I'm getting 120 months for this conviction here in the federal level for that simple mistake I committed.
>
> . . . Now when I pleaded [to the breaking and entering offense] I thought that I was pleading to one – I wasn't aware of what one count was or what two counts was. I thought that by pleading guilty to breaking, they were charging with [sic] me with two automobiles. . . .When I came up here and decided to take a guilty plea here, I was under the impression that I would be allowed a safety valve.

>Now, it all comes out to me getting 120 months here for participation that I had in this matter, which is not even compared to the participation that my five other co-defendants had in this case. I mean I know I pled guilty to the offense. I'm aware I committed a crime, and I'm here before your court and I acknowledge that they have repercussions . . . . But through all my belief in the whole matter, I had it figured that I wasn't – that the law would have seen what I've done and that the law would look back at my record. I do have 18 arrests. . . . I really was not expecting to get a sentence of 120 months on a plea bargain where if I would have gone to trial or if I would have lost that's what I would have gotten, ten years. So basically what am I getting for pleading to the government? What am I getting, Your Honor? Thank you.

*Id.* at 42-44.

In reply, I engaged in the following colloquy with Mendez:

>THE COURT: Well, let me start by saying that I think I have very little discretion in this case and, Mr. Mendez, it's obvious to me that you don't feel that you're being treated fairly today and I want you to understand that I'm bound to follow the law and the law has not left me any room.
>
>THE DEFENDANT: I understand, Your Honor.
>
>THE COURT: . . . I will tell you that if [the breaking and entering] conviction is wiped off your record, I would sentence you very differently than I am required to sentence you today and you can take that for what it's worth. I don't expect it to bring you much comfort but I'm bound by the law.
>
>THE DEFENDANT: I understand, Your Honor. I very much understand.
>
>THE COURT: . . . Your guideline range [63-78 months] is much lower . . . than the mandatory minimum in this case. I really see absolutely no reason to go any higher than the mandatory minimum in this case. I am convinced that you had a very minor role in this transaction. And I appreciate your feeling that you're being sentenced more harshly than you ought to be for that minor role. All that being said, I don't have much choice and it's my intention to sentence you as follows:
>
>To a period of incarceration of 120 months . . . .

*Id.* at 47-48.

Mendez appealed his sentence on the ground that this Court erred by counting the

Massachusetts breaking and entering conviction toward his criminal history score. His argument – that it was impossible for him to knowingly and voluntarily plead guilty to the breaking and entering charge in Massachusetts state court when he was not, and could not have been, aware of the conviction's implications for federal sentencing – was rejected by the Second Circuit on July 13, 2006 in a summary affirmance.

Mendez filed his first section 2255 motion on July 16, 2007. In that motion, Mendez alleges that: (1) his guilty plea was not made knowingly or voluntarily because he entered the plea agreement with ineffective assistance of counsel, (2) the Massachusetts conviction should never have been counted towards his criminal history score because it, too, was not made knowingly or voluntarily, and (3) the Massachusetts conviction should not count as a "prior sentence" under U.S. Sentencing Guidelines Manual § 4A1.1(b) because the 175-day period of time served was either pretrial detention or was counted toward his state drug trafficking sentence. On December 7, 2009, Mendez filed a second motion pursuant to section 2255 seeking a reduction in his sentence. Specifically, Mendez moves to credit the 175 days served on the breaking and entering conviction toward his federal sentence for cocaine distribution.

## II. Standard of Review

A prisoner in federal custody may "move the court which imposed [his] sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Section 2255 relief is available for "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989) (internal citations omitted). It is, in other words, the "proper vehicle when the federal prisoner seeks to challenge the legality of the

*imposition* of a sentence by a court." *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003) (quotation omitted).

By contrast, section 2255 is an inappropriate form of relief for a prisoner challenging "the *execution* of his sentence, . . . such as calculations of the credit to be given for other periods of detention, or decisions to deny parole, . . . or conditions of confinement." *Id.* (quotation omitted). Those claims are properly brought under 28 U.S.C. § 2241. Moreover, the court with jurisdiction to hear a section 2241 motion is not the court that entered the prisoner's sentence but the court in the district where the petitioner is in custody. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *Jagat v. United States*, No. 3:08cv1106 (JCH), 2008 WL 4538981, at *3 (D. Conn. Oct. 8, 2008) ("[B]ecause [petitioner] is confined within the District of Rhode Island, he must proceed with his case in that district, and not in Connecticut.").

## III. Discussion

### A. The July 16, 2007 Section 2255 Motion

When Mendez received a sentence not exceeding 10 years' imprisonment, the terms of his plea agreement barred him from appealing and collaterally attacking his conviction and sentence. Although such waivers of appeal and collateral challenge rights are read "narrowly" and "strictly against the government," they are nonetheless enforceable provided that they are made knowingly and voluntarily. *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001). The terms of the appellate waiver in Mendez's plea agreement, even when read narrowly, apply to his present motion to collaterally attack his sentence. Thus, Mendez's section 2255 claim is

waived unless he can demonstrate that he accepted the government's plea offer unknowingly or involuntarily.

Defense counsel's ineffectiveness is one basis for concluding that a defendant entered a guilty plea unknowingly or involuntarily, and that his appellate and collateral challenge waiver is unenforceable. *See United States v. Monzon*, 359 F.3d 110, 118-19 (2d Cir. 2004) ("The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of the ineffective assistance of counsel was meritorious. But if the record on appeal shows that that claim lacks merit, the appeal should be dismissed because the waiver should be enforced."). That theory of ineffective assistance of counsel is the theory of the habeas petition before the court. Mendez contends that his attorney performed deficiently, and that his attorney's deficient performance caused him to accept a plea agreement he either did not understand or to which he would not have voluntarily consented. Consequently, Mendez argues, his appellate and collateral challenge waiver cannot be enforced against him.

To prove counsel's ineffectiveness and, by extension, that his plea was made unknowingly or involuntarily, Mendez must meet the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Monzon*, 359 F.3d at 119; *Hernandez*, 242 F.3d at 112. First, Mendez must show that his attorney's representation fell below an objective standard of reasonableness, as measured by prevailing professional norms. In doing so, he must overcome the strong presumption that his attorney performed reasonably. *Strickland*, 466 U.S. at 689. Once he demonstrates his attorney's deficient representation, Mendez must then show that he was prejudiced by counsel's performance. Specifically, Mendez must demonstrate that there is a reasonable likelihood that the outcome of his criminal proceedings would have been different but

for counsel's ineffectiveness. When the claim concerns ineffective assistance with respect to accepting a plea offer, the petitioner must show a reasonable probability that he would have rejected the plea offer and proceeded to trial had he received proper representation. *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).

Mendez's failure to meet his burden on either prong warrants denial of his petition for habeas relief. The parties disagree about the facts of what Hillis told Mendez before Mendez pled guilty. Had this case hinged on the alleged deficiency of Hillis's representation, an evidentiary hearing would have been appropriate. No such hearing is necessary to decide the prejudice component of Mendez's petition, however, because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The evidence is plain: there is no reasonable probability that Mendez would have proceeded to trial in lieu of pleading guilty. Mendez therefore cannot demonstrate that he was prejudiced by counsel's purported ineffectiveness and his claim fails.

*Arteca* provides an illustrative example of a petitioner's failure to establish that he was prejudiced by counsel's deficient performance relating to his acceptance of a plea offer. There, the Second Circuit identified four factors indicating that the defendant was not prejudiced by any ineffectiveness of counsel: (1) the defendant knew from the plea agreement's terms and the court's statement during the colloquy that the plea agreement's sentence was not binding on the court; (2) the defendant received a benefit, in the form of a three-level reduction for acceptance of responsibility, in exchange for his plea; (3) his co-defendants pled guilty, which suggested that the government had a strong case against him, too; and (4) the government could have prosecuted additional charges that it dismissed in exchange for the defendant's plea. 411 F.3d at 321-22.

The totality of those factors, the *Arteca* Court held, established that the defendant was not prejudiced and would not have exercised his trial rights had he received what he believed to be effective assistance of counsel.

Quite similar factors can be found in the record of Mendez's plea and sentencing. First, Judge Garfinkel said unequivocally at the plea hearing that the sentence would ultimately be determined by the court at sentencing and that Mendez faced a statutory ten-year mandatory minimum sentence. Second, as in *Arteca*, the government moved to reduce Mendez's sentence level by three levels, on account of Mendez's acceptance of responsibility. That benefit, of course, was cold comfort in light of the disparity between Mendez's statutory minimum sentence and his Guidelines range. The federal mandatory minimum sentence was a favorable offer to Mendez, however, insofar as it was less than the 15-year imprisonment he would have faced upon conviction in state court. That is why Hillis stated at the plea hearing that Mendez was pleading guilty in order "to have Massachusetts go away." Resp't Ex. 3, at 22. Third, the docket for Mendez's criminal action notes that Mendez's co-defendants, including Taborda, pled guilty to charges in the government's superseding indictment, which indicates that the government's case had weight.

Finally, although the fourth *Arteca* factor – the government's power to file additional charges against Mendez that would have resulted in a longer sentence – does not appear to be present,[1] a more compelling factor is present: the Court's explicit warnings at the plea hearing

---

[1] Mendez pled guilty to conspiring to possess with intent to distribute cocaine. The dismissed count against him was the actual possession with intent charge. Once again, however, the government of Massachusetts could have filed more serious charges against Mendez – charges he had already once been convicted of.

and at sentencing that Mendez faced a ten-year mandatory minimum sentence. Although he hoped that he would qualify for a safety-valve departure, Mendez understood that without the safety valve he faced a mandatory 120 months' imprisonment regardless whether he pled guilty or was found guilty by a jury. *See* Resp't Ex. 8, at 43 ("I'm aware I committed a crime, and I'm here before your court and I acknowledge that they have repercussions . . . . But . . . I really was not expecting to get a sentence of 120 months on a plea bargain where I would have gone to trial or if I would have lost that's what I would have gotten, ten years.").

"[E]ven if counsel provides deficient advice, a defendant who understands the actual sentencing possibilities prior to entering the plea cannot succeed on an ineffective assistance of counsel claim because the defendant cannot prove that 'but for counsel's professional errors,' he would have elected to proceed with the trial instead of pleading guilty." *United States v. Soler*, 289 F. Supp. 2d 210, 215 (D. Conn. 2003), *aff'd*, 124 F. App'x 62 (2d Cir. 2005). That is particularly true in this case, where Mendez was repeatedly and adequately warned about the minimum sentence he faced; where Mendez's minimum sentence was more favorable than the state alternative; and where the record suggests a strong government case against him. The totality of the evidence shows that Mendez was not prejudiced by Hillis's representation, even assuming that Hillis performed deficiently. Mendez did not receive ineffective assistance of counsel and, therefore, his plea agreement has not been shown to have been made unknowingly or involuntarily.

Because there was no constitutional violation with respect to the process by which Mendez agreed to plead guilty, Mendez's waiver of his rights to appeal and collaterally challenge his sentence is valid and enforceable. Mendez has therefore waived his collateral challenges to

his sentence on the basis that the Massachusetts conviction for breaking and entering was constitutionally infirm or that it was wrongly counted as a "prior sentence" for the purposes of calculating his Guidelines criminal history score. Thus, Mendez is bound by the agreement he entered into with the government and may not collaterally attack his sentence.[2] Mendez's July 16, 2007 section 2255 motion is therefore denied.

B.  The December 7, 2009 Section 2255 Motion

Mendez's second section 2255 motion, filed on December 7, 2009, seeks to reduce his federal sentence by 175 days because the Massachusetts court counted the 175 days that Mendez received as time served twice: first, as time served for the breaking and entering conviction, and,

---

[2] Even if I were to consider the merits of Mendez's claims, however, his petition for habeas relief would fail. First, his argument that his breaking and entering conviction is constitutionally invalid because of his Massachusetts counsel's ineffectiveness was already rejected by this court at sentencing and summarily dismissed by the Court of Appeals. It therefore is not a new, non-successive ground for legal relief under 28 U.S.C. § 2255. *See Riascos-Prado v. United States*, 66 F.3d 30, 33 (2d Cir. 1995) ("It is clear that section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." (quotation omitted)). Furthermore, the fact that Mendez's Massachusetts attorney could not have known of the federal consequences of pleading guilty to the breaking and entering charge – Mendez pled guilty several months before he was federally indicted – does not amount to an actual deprivation of counsel. *See United States v. Sharpley*, 399 F.3d 123, 126 (2d Cir. 2005) (distinguishing between actual deprivation of counsel and ineffective assistance of counsel, and holding that only the former is a ground for attacking a prior state conviction at sentencing). Nor does that lack of foresight render Mendez's plea unknowing or involuntary. "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady v. United States*, 397 U.S. 742, 757 (1970).

Likewise, Mendez's claim that his breaking and entering conviction was not a "prior sentence" for the purpose of tabulating his criminal history score was already argued before and rejected at Mendez's sentencing, and is therefore not a new ground for relief. Nonetheless, the record shows that Mendez received 175 days time served for his offense, which is enough to garner two criminal history points under section 4A1.1(b) of the Guidelines. *See* U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.2 ("[C]riminal history points are based on the sentence pronounced, not the length of time actually served."); *United States v. Staples*, 202 F.3d 992, 997-98 (7th Cir. 2000) (holding that sentence of "time served" constituted prior sentence).

second, as time served for the cocaine trafficking offense. In other words, Mendez argues that, because the Massachusetts court reduced his cocaine trafficking sentence by 175 days, so too should the Bureau of Prisons ("BOP") credit the same period toward his federal cocaine distribution sentence.[3] The government correctly argues, however, that Mendez's most recent claim is not a section 2255 motion attacking his sentence as imposed in violation of the Constitution or federal law. Instead, Mendez's motion to receive credit for time incarcerated in Massachusetts while his cocaine trafficking prosecution was pending is properly brought under 28 U.S.C. § 2241 because it is a challenge to his sentence's *execution*, and not its imposition. *Poindexter*, 333 F.3d at 377.

When treated as a section 2241 claim, Mendez's December 7, 2009 motion must be denied because this court lacks authority to consider it. *Rumsfeld*, 542 U.S. at 443; *Jagat*, 2008 WL 4538981, at *3. The motion is therefore denied without prejudice to Mendez filing a new section 2241 action in a court with appropriate jurisdiction. According to the government, that court is the Northern District of Texas, Abilene Division, where the Big Spring Correctional Institution, Mendez's custodial site, is located.[4]

---

[3] The BOP credited Mendez with 1,465 days served. That time period reflects Mendez's state custody beginning on April 19, 2001 and ending June 13, 2004, and then a period of custody beginning again on July 8, 2004 and terminating May 16, 2005, the day before his federal sentencing.

[4] Although this court lacks jurisdiction to rule on Mendez's action, I add in dicta that Mendez's claim likely lacks merit. As noted in Mendez's own attached exhibits, 18 U.S.C. § 3585(b)(1) states in relevant part: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed . . . that *has not been credited against another sentence*" (emphasis added). The statute, therefore, "bars double-counting." *Werber v. United States*, 149 F.3d 172, 173 (2d Cir. 1998).
The 175 days that Mendez seeks to subtract from his federal sentence for time he spent in

## IV. Conclusion

For the reasons stated above, Mendez's July 16, 2007 section 2255 motion to vacate, set aside, or correct his sentence (3:07cv1078: doc. # 1) is DENIED in its entirety. The December 7, 2009 section 2255 motion (3:09cv1992: doc. #1) is DENIED without prejudice to Mendez filing a new motion, pursuant to 28 U.S.C. § 2241, in the district where he is serving his sentence.

It is so ordered.

Dated at Bridgeport, Connecticut, this 8th day of March 2010.

/s/
Stefan R. Underhill
United States District Judge

---

state custody prior to his state drug trafficking conviction were credited by the Massachusetts court to his breaking and entering offense. It appears that the Massachusetts court also credited the 175 days to the cocaine trafficking conviction. But the fact that Massachusetts permits such double-counting is irrelevant to the BOP's administration of federal sentences. The record is unambiguous that the state court awarded the 175 days served to Mendez's unrelated and earlier breaking and entering offense. Because the 175 days have "been credited against another sentence," Mendez would not be entitled under 18 U.S.C. § 3585(b)(1) to have that time credited to his federal sentence, too.